1  Christopher C. McNatt, Jr. (SBN 174559)
   cmcnatt@scopelitis.com
2  SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, LLP
   2 North Lake Avenue, Suite 460
3  Pasadena, California 91101
   Tel.:  (626) 795-4700
4  Fax:  (626) 795-4790

5  Christopher J. Eckhart
   Admitted Pro Hac Vice
6  ceckhart@scopelitis.com
   SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
7  10 West Market Street, Suite 1500
   Indianapolis, IN  46204
8  Tel: (317) 637-1777
   Fax: (317) 687-2414

9
   Attorneys for Defendant,
10 Trimac Transportation Services (Western) Inc.

11                      UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13                          SAN JOSE DIVISION

14 DOUGLAS ROBERTS,                    )  Case No. 5:12-cv-05302-HRL
                                       )
15            Plaintiff,               )  Assigned to the Honorable Howard R. Lloyd
                                       )
16     vs.                             )  **DEFENDANT TRIMAC TRANSPORTATION
                                       )  SERVICES (WESTERN) INC.'S NOTICE OF
17 TRIMAC TRANSPORTATION SERVICES      )  MOTION AND MOTION FOR JUDGMENT
   (WESTERN) INC., a Delaware Corporation, )  ON THE PLEADINGS REGARDING
18                                     )  PREEMPTION OF PLAINTIFF'S MEAL
              Defendant.               )  BREAK CLAIMS**
19                                     )
                                       )
20                                     )  Date:  August 27, 2013
                                       )  Time:  10:00 a.m.
21                                     )  Dept:   #2, Fifth Floor
                                       )  Judge:  Howard R. Lloyd
22 _____ )

23 **TO PLAINTIFF DOUGLAS ROBERTS AND HIS ATTORNEY OF RECORD:**

24       **PLEASE TAKE NOTICE** that on August 27, 2013, at 10:00 a.m., or as soon thereafter as

25 counsel may be heard in Department #2, Fifth Floor of the above-titled Court, located at 280 South

26 1st Street, San Jose, California, 95113, Defendant Trimac Transportation Services (Western) Inc. will

27 and hereby does move this Court for an Order for Judgment on the Pleadings with respect to the

28

1  following defenses:

2      1.      California's meal and rest break laws are preempted by the Federal Aviation

3              Administration Authorization Act of 1994, 49 U.S.C. § 14501.

4      2.      California's meal and rest break laws are preempted by the Hours of Service

5              Regulations promulgated at 49 C.F.R. §§ 395.1, *et seq.*

6      This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points

7  and Authorities, the papers and records on file with this Court, and other such oral and documentary

8  evidence as may be presented to the Court at or prior to the hearing on the Motion.

9

10 Dated:  July 23, 2013                          */s/Christopher J. Eckhart*
                                                   Christopher J. Eckhart
11                                                 Christopher C. McNatt, Jr.

12                                                 Attorneys for Defendant,
                                                   Trimac Transportation Services
13                                                 (Western) Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

I.      INTRODUCTION ................................................................................................1

II.     STATEMENT OF ISSUES TO BE DECIDED ..................................................2

III.    BACKGROUND FACTS .....................................................................................2

IV.     ARGUMENT ........................................................................................................3

        A.      Standard ....................................................................................................3

        B.      Roberts' Claims Under California's Meal Break Laws Are Preempted By
                The FAAAA.................................................................................................3

                1.      California's Meal and Rest Break Laws ........................................3

                2.      Preemption Under FAAAA Can Be Decided On The Pleadings .....4

                3.      California's Break Rules Claims Are Expressly Preempted By The
                        FAAAA...............................................................................................5

                        a.      The FAAAA Prevents "Patchwork" Regulation by Broadly
                                Preempting State Laws that Impact any Carrier's Prices,
                                Routes or Services................................................................5

                        b.      *Penske* Confirms the California Rules Have a "Substantive
                                Impact" on Carrier Prices, Routes and Services ..................8

                                i.      Effect on Routes.........................................................9
                                ii.     Effect on Services ....................................................10
                                iii.    Effect on Prices ........................................................12

                        c.      The California Break Rules Produce an FAAAA-Forbidden
                                "Patchwork" Effect ...........................................................14

                        d.      *Mendez* Does Not Support a Contrary Conclusion .............15

                                i.      A Law Need Not Be Specifically Directed at Motor
                                        Carriers Nor Constitute Traditional "Economic"
                                        Regulation to Be Preempted By the FAAAA .........16

i

Case No. 5:12-cv-05302-HRL
Defendant Trimac Transportation Services (Western) Inc.'s Memorandum
of Points and Authorities in Support of Motion for Summary Adjudication

|  | ii. | *Mendonca* Dealt With Preemption of a Wage Law and is Therefore Inapposite........................................................17 |

|  | iii. | The *Mendez* Court Overstated the "Flexibility" of the Break Laws ...........................................................................17 |

C. California's Break Rules Are Impliedly Preempted By The HOS Regulations ........................................................................................................19

    1. The HOS Regulations Impliedly Preempt Conflicting State Law ...................19

    2. California's Break Rules Are Preempted Because They Effectively Establish a Maximum on Hours Worked the Conflicts with the HOS Regulations ........................................................................................21

V. CONCLUSION...........................................................................................................24

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Accord Fidelity Federal Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153
(1982) ...................................................................................................... 20, 23

*Agsalud v. Pony Express Courier Corp.*, 833 F.2d 809 (9th Cir. 1987) .................................... 2, 22, 24

*Aguiar v. California Sierra Express, Inc.*, No. 2:11-cv-02827-JAM-GGH, 2012 WL
1593202 (E.D. Cal. May 4, 2012) .......................................................................... *passim*

*AIB Express, Inc. v. FedEx Corp.*,
358 F. Supp. 2d 239 (S.D.N.Y. 2004) .................................................................. 16

*American Airlines, Inc. v. Wolens*,
513 U.S. 219 (1995) ................................................................................... 16

*American Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009) ................. 5, 15

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) ............................. 3

*Blackwell v. Skywest Airlines, Inc.*,
2008 WL 5103195 (S.D. Cal. Dec. 3, 2008) ............................................................ 17

*Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1038-40, 139
Cal.Rptr.3d 315, 273 P.3d 4513 (2012) ............................................................. 9, 11

*Brown v. United Air Lines, Inc.*,
656 F. Supp. 2d 244 (D. Mass. 2009) ................................................................. 17

*Brown v. Wal-Mart Stores, Inc.*, No. C 08-5221 SI, 2013 WL 1701581, at *5 (N.D.
Cal. April 18, 2013) ................................................................................. 4, 16

*California Dump Truck Owners Ass'n v. Nichols*, 2012 WL 273162 (E.D. Cal. Jan. 30,
2012) ................................................................................................. 11

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d
1184, 1185 (9th Cir. 1998) ......................................................................... 15, 17

*Campbell v. Vitran Express, Inc.*, No. CV 11-05029-RGK (SHx), 2012 WL 2317233
(C.D. Cal. June 8, 2012), *appeal pending* ........................................................... *passim*

*Cardenas v. McLane Foodservices, Inc.*, 796 F. Supp. 2d 1246 (C.D. Cal. 2011) ..................... 13, 15

*Chavis Van & Storage of Myrtle Beach, Inc. v. United Van Lines, LLC*,
2012 WL 47469 (E.D. Mo. Jan. 9, 2012) ................................................................ 16

*Cole v. CRST, Inc.*, No. EDCV 08-1570-VAP (OPx), 2012 WL 4479237 (C.D. Cal.
Sept. 27, 2012) ..................................................................................... *passim*

ii

Case No. 5:12-cv-05302-HRL
Defendant Trimac Transportation Services (Western) Inc.'s Memorandum
of Points and Authorities in Support of Motions for Judgment on the Pleadings and Summary Judgment

*Data Mfg., Inc. v. United Parcel Serv.*,
557 F.3d 849 (8th Cir. 2009) ................................................................................16

*DiFiore v. American Airlines, Inc.*, 646 F.3d 81 (1st Cir. 2011), *cert. denied*, 132 S.Ct.
761 (2011) ......................................................................................7, 13, 16

*Dilts v. Penske Logistics LLC*, 819 F. Supp. 2d 1109, 1119-20 (S.D. Cal. 2011) ........................*passim*

*Dunn v. Castro*, 621 F.3d 1196, 1205 n.6 (9th Cir. 2010) ....................................................3

*Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir.1989) ................................3

*Esquivel v. Vistar Corp.*, No. 2:11-cv-07284 JHN-PJWx, 2012 WL 516094 (C.D. Cal.
Feb. 8, 2012) ..................................................................................*passim*

*Fitz-Gerald v. Skywest Airlines, Inc.*, 155 Cal. App. 4th 411 (2007) ................................13

*Geier v. American Honda Motor Corp.*,  529 U.S. 861 (2000) ................................19, 20, 23

*Gibbons v. Ogden*, 22 U.S. 1, 211 (1894) ........................................................................5

*Hillsborough County v. Automated Med. Labs., Inc.*,  471 U.S. 707 (1985)..............................5, 19, 20

*Hines v. Davidowitz*,  312 U.S. 52 (1941) ......................................................................19

*In re Korean Air Lines Co.*, 642 F.3d 685 (9th Cir. 2011) ....................................................16

*Jasper v. C.R. England, Inc.*, No. 2:08-cv-05266, 2012 WL 7051321 (C.D. Cal. Aug.
30, 2012) ......................................................................................*passim*

*Kirby v. Immoos Fire Protection, Inc.*,
274 P.3d 1160 (Cal. 2012) ................................................................13, 17

*Marine v. Interstate Distrib. Co.,* No. RG07-358277 (Super. Ct. Alameda Cnty. March
14, 2013) ..................................................................................1, 14, 16, 17

*Mendez v. R+L Carriers, Inc.*, 2012 WL 5868973 (N.D. Cal. November 19, 2012)...13, 15, 16, 17, 18

*Miller v. Southwest Airlines*, --- F. Supp. 2d ----, 2013 WL 556963, at *5-*7 (N.D.
Cal. February 12, 2013) ................................................................................16

*Missing Link Jewelers, Inc. v. United Parcel Serv., Inc.*,
2009 WL 5065682 (N.D. Ill. Dec. 16, 2009) ................................................16

*Mitchell v. U.S. Airways, Inc.*,
874 F.Supp.2d 50 (D. Mass. July 12, 2012) ................................................17

*Morales v. Trans World Airlines*, 504 U.S. 375 (1992)........................................5, 6, 7, 16

*National Fed'n. of the Blind v. United Airlines, Inc.*,
2011 WL 1544524 (N.D. Cal. Apr. 25, 2011) ................................................17

*New Hampshire Motor Transport Ass'n v. Rowe*,  448 F.3d 66, 72 (1st Cir. 2006),
*aff'd, Rowe*, 552 U.S. 364 ................................................................................4, 8

*Owner-Operator Independent Drivers Ass'n v. Fed. Motor Carrier Safety Admin.*, 494
   F.3d 188 (D.C. Cir. 2007) ............................................................................................... 19

*Pacific Merchant Shipping Ass'n v. Aubry*, 918 F.2d 1409 (9th Cir. 1990), *cert.
   denied*, 504 U.S. 979 (1992) ........................................................................... 2, 22, 23, 24

*Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 364 (2008) ......................... *passim*

*Samica Enters., LLC v. Mail Boxes Etc. USA, Inc.*,
   637 F. Supp. 2d 712 (C.D. Cal. 2008) ........................................................................... 16

*Sanchez v. Aerovias De Mexico, S.A. De C.V.*, 590 F.3d 1027, 1029 n.3 (9th Cir. 2010)..................... 6

*Travers v. Jetblue Airways Corp.*,
   2009 WL 2242391 (D. Mass. July 23, 2009) ................................................................ 17

*Witty v. Delta Air Lines, Inc.*,
   366 F.3d 380 (5th Cir. 2004) .......................................................................................... 16

## Constitutional Provisions and Statutes

U.S. Constitution, art. VI, cl. 2 .......................................................................................... 5

49 U.S.C. § 14501 ......................................................................................................... 1, 2

49 U.S.C. § 14501(c)(1) ........................................................................................... 2, 5, 12

49 U.S.C. § 14501(c)(2)(A) ............................................................................................. 15

49 U.S.C. § 31136(a) ....................................................................................................... 19

49 U.S.C. § 31502(b) ....................................................................................................... 19

49 U.S.C. § 41713(b)(1) .................................................................................................... 5

Cal. Bus. & Prof. Code § 17200 ......................................................................................... 1

Cal. Code Regs. tit. 13, § 2845 ........................................................................................ 10

Cal. Code Regs. tit. 8, § 11090 ........................................................................................... 1

Cal. Lab. Code § 226.7 .............................................................................................. 13, 18

Cal. Lab. Code § 226.7(a) .................................................................................................. 3

Cal. Lab. Code § 226.7(b) ................................................................................................ 17

Cal. Lab. Code § 512 .................................................................................................... 1, 3

Cal. Lab. Code § 512(a) ................................................................................................... 20

Cal. Veh. Code § 21718(a) .............................................................................................. 10

Cal. Veh. Code § 22500 ................................................................................................... 10

| | |
|---|---|
| Cal. Veh. Code § 22502 | 10 |
| Cal. Veh. Code § 22505 | 10 |
| Cal. Veh. Code § 22507.5 | 10 |
| Cal. Veh. Code § 35701 | 10 |
| Fed. R. Div. P. 12(c) | 3 |

**Other Authorities**

| | |
|---|---|
| 49 C.F.R. § 392.14 | 10 |
| 49 C.F.R. § 395.1 | 1,2 |
| 49 C.F.R. § 395.2 | 21 |
| 49 C.F.R. § 395.3 | 21 |
| 49 C.F.R. § 395.3(a) | 20 |
| 49 C.F.R. § 395.3(a)(2) | 21 |
| 49 C.F.R. § 395.3(b) | 20 |
| 49 C.F.R. § 397.69 | 10 |
| 49 C.F.R. § 397.7 | 10 |
| 1994 U.S.C.C.A.N. 1715, 1759 | 6 |
| 2011 Final Rulemaking, 76 Fed. R. Reg. at 81134, 81136, 81160-81161 | 21, 24 |
| H.R. Conf. Rep. No. 103-677 (1994) | 6, 15 |
| *Hours of Service of Drivers*, 61 Fed. Reg. 57252, 57253 (Nov. 5, 1996) | 23 |
| *Hours of Service of Drivers*, 72 Fed. Reg. 71247, 71249 (Dec. 17, 2007) | 23 |
| *Hours of Service of Drivers*, 76 Fed. Reg. 81134 (Dec. 27, 2011) | 20, 24 |
| Industrial Welfare Commission Order No. 9-2001 Regulating Wages, Hours and Working Conditions in the Transportation Industry ("Wage Order No. 9-2001") | 1, 4, 18, 20, 21 |
| Pub. L. No. 103-305, Title VI, § 601(a)(1), 108 Stat. 1569, 1605 (1994) | 6 |
| *Regulatory Guidance for the Federal Motor Carrier Safety Regulations*, 62 Fed. Reg. 16370 (April 4, 1997) | 18 |
| Federal Motor Carrier Safety Administration, Interim Final Rule in 2007 | 23 |
| S.R. No. 95-631 | 7 |

Defendant, Trimac Transportation Services (Western) Inc. ("Trimac"), respectfully submits the following Memorandum of Points and Authorities in Support of its Motion for Judgment on the Pleadings Regarding Preemption of Plaintiff's Meal Break Claims.

## I.   **INTRODUCTION**

In his First Cause of Action, Plaintiff, Douglas Roberts ("Roberts"), asserts Trimac failed to provide Roberts meal periods under Cal. Lab. Code § 512 and Industrial Welfare Commission Order No. 9-2001 Regulating Wages, Hours and Working Conditions in the Transportation Industry.[1]   In addition, Roberts' Fourth Cause of Action derivatively asserts an Unfair Competition Law ("UCL") claim under Cal. Bus. & Prof. Code §§ 17200, *et seq.* based upon the alleged meal break violations. Trimac is entitled to judgment on the pleadings on the First Cause of Action and on the derivative allegation of the Fourth Cause of Action because the California meal break rules are preempted by the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), 49 U.S.C. § 14501, and by the Hours of Service ("HOS") Regulations promulgated at 49 C.F.R. §§ 395.1, *et seq.* by the Federal Motor Carrier Safety Administration ("FMCSA").

First, as determined in *Dilts v. Penske Logistics LLC*, application of California's break rules to Trimac is expressly preempted by the FAAAA because the break rules "bind motor carriers to a smaller set of possible routes" and "directly and significantly relate[ ] to . . . the frequency and scheduling of transportation," thereby imposing "substantive standards upon a motor carrier's routes and services," and also "creat[ing] a significant impact upon [motor carrier] prices." 819 F. Supp. 2d 1109, 1119-20 (S.D. Cal. 2011), *appeal pending*.  The *Penske* holding is further validated by the six equally compelling decisions in *Marine v. Interstate Distrib. Co.*, No. RG07-358277 (Super. Ct. Alameda Cnty. March 14, 2013)[2]; *Cole v. CRST, Inc.*, No. EDCV 08-1570-VAP (OPx), 2012 WL 4479237 (C.D. Cal. Sept. 27, 2012); *Jasper v. C.R. England, Inc.*, No. 2:08-cv-05266, 2012 WL 7051321 (C.D. Cal. Aug. 30, 2012; *Campbell v. Vitran Express, Inc.*, No. CV 11-05029-RGK (SHx), 2012 WL 2317233 (C.D. Cal. June 8, 2012), *appeal pending*; *Aguiar v. California Sierra Express,*

---

[1] Wage Order No. 9-2001 is currently found at Cal. Code Regs. tit. 8, § 11090.

[2] *See* Trimac's Request for Judicial Notice (attached to this Motion).

*Inc.*, No. 2:11-cv-02827-JAM-GGH, 2012 WL 1593202 (E.D. Cal. May 4, 2012; and *Esquivel v. Vistar Corp.*, No. 2:11-cv-07284 JHN-PJWx, 2012 WL 516094 (C.D. Cal. Feb. 8, 2012. Those cases, together with the U.S. Supreme Court ruling in *Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 364 (2008, confirm the California break rules are captured by the FAAAA's broad preemptive sweep making state laws "related to a price, route, or service of any motor carrier . . . with respect to the transportation of property" unlawful and therefore unenforceable against Trimac. 49 U.S.C. § 14501(c)(1).

Second, California's break rules are also impliedly preempted because they effectively establish a maximum on hours worked that differs from the maximum set by the Hours of Service ("HOS") Regulations promulgated at 49 C.F.R. §§ 395.1, *et seq.* by the Federal Motor Carrier Safety Administration ("FMCSA"). Therefore, under the controlling authority of *Pacific Merchant Shipping Ass'n v. Aubry*, 918 F.2d 1409 (9th Cir. 1990), *cert. denied*, 504 U.S. 979 (1992 and *Agsalud v. Pony Express Courier Corp.*, 833 F.2d 809 (9th Cir. 1987)), the break rules cannot be lawfully advanced on behalf of Roberts.

For these reasons and as set forth in further detail below, Trimac is entitled to judgment as a matter of law that Roberts' meal break claims are preempted by federal law.

## II.   STATEMENT OF ISSUES TO BE DECIDED

1.   Whether Roberts' claims under California's meal break law are preempted by the FAAAA, 49 U.S.C. § 14501.

2.   Whether Roberts' claims under California's meal break laws are preempted by the HOS Regulations promulgated at 49 C.F.R. §§ 395.1, *et seq.* by the FMCSA.

## III.   BACKGROUND FACTS

Trimac is a federally-authorized interstate motor carrier that provides transportation solutions to a variety of customers throughout the United States. *See Def.'s Request for Judicial Notice* (ECF No. 33). The bulk of Trimac's work in California consists of hauling hazardous materials to various customers both within and outside California. *See Defendant's Memo. of Points and Auth. in Support*

*of Cross-Motion for Partial Summary Judgment* (ECF No. 44) at 7.[3]  Roberts is a former truck driver for Trimac.  *Pl.'s Memo. of Points & Auth. in Support of Plaintiff's Motion for Partial Summary Judgment* (ECF No. 27) at 1:21-22.  Roberts filed a Complaint on October 15, 2012, against Trimac, asserting, *inter alia*, Trimac failed to provide him meal breaks in violation of the California Labor and Business and Professions Codes.  *See Complaint* (ECF No. 1).

## IV.   ARGUMENT

### A.   Standard

A Rule 12(c) motion is "'functionally identical' to a motion to dismiss for failure to state a claim; the only significant difference is that a Rule 12(c) motion is properly brought 'after the pleadings are closed-but early enough not to delay trial.'" *Campbell*, 2012 WL 2317233, at *1 (quoting *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir.1989); Fed. R. Civ. P. 12(c)).  Pursuant to Rule 12(c), the Court should grant a motion for judgment on the pleadings when, as here, the facts alleged in the complaint, even if true, fail to support the claim.  *See Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990).  The Court may also consider allegations in the pleadings and other matters that are subject to judicial notice in ruling on this motion.  *Dunn v. Castro*, 621 F.3d 1196, 1205 n.6 (9th Cir. 2010).

### B.   Roberts' Claims Under California's Meal Break Laws Are Preempted By The FAAAA

#### 1.   California's Meal and Rest Break Laws

The California meal break law at issue here, Cal. Lab. Code § 512, states:

> An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes . . . .  An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes . . . .

Cal. Lab. Code § 226.7(a) provides further that:  "No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare

---

[3] Roberts did not dispute these facts in his summary judgment briefing.

3

Case No. 5:12-cv-05302-HRL
Defendant Trimac Transportation Services (Western) Inc.'s Memorandum
of Points and Authorities in Support of Motion for Judgment on the Pleadings

1   Commission."  IWC Wage Order No. 9 applies to the transportation industry and is controlling here.

2   IWC Wage Order No. 9 imposes the same meal period frequency timing requirements as the

3   California Labor Code, and also requires that employers

> authorize and permit all employees to take rest periods, which insofar as
> practicable shall be in the middle of each work period.  The authorized rest
> period time shall be based on the total hours worked daily at the rate of ten
> (10) minutes net rest time per four (4) hours or major fraction thereof.
> However, a rest period need not be authorized for employees whose total
> daily work time is less than three and one-half (3 ½) hours.

8   These California meal and rest break provisions dictate the number of breaks required, the length of

9   time a break must last, and when the breaks must be taken.

## 2.    Preemption Under FAAAA Can Be Decided On The Pleadings

10      The issue of whether the FAAAA preempts California's meal break laws is one of law that

11  can be decided on the face of the pleadings.  *See Penske*, 819 F. Supp. 2d at 1119-20 ("no factual

12  analysis is required to decide this question of preemption"); *Brown v. Wal-Mart Stores, Inc.*, No.

13  C 08-5221 SI, 2013 WL 1701581, at *5 (N.D. Cal. April 18, 2013) ([T]he court disagrees with

14  plaintiffs' assertion that preemption should not be decided at the pleading stage."); *Cole*, 2012 WL

15  4479237, at *4-6 (rejecting contention that the preemption question requires a "fact-bound analysis"

16  in finding that "[e]vidence outside the pleadings . . . is not necessary to determine whether the Meal

17  and Rest Break Laws have an impact on prices, routes, or services"); *Campbell*, 2012 WL 2317233,

18  at *4 (finding that the FAAAA preempts California's meal and rest break requirements as a matter of

19  law in order on motion for judgment on the pleadings); *Esquivel*, 2012 WL 516094, at *3-6 (granting

20  motion to dismiss complaint on the ground the FAAAA preempts California's meal and rest break

21  laws); *Aguiar*, 2012 WL 1593202, at *1 (granting motion to dismiss on the ground the FAAAA

22  preempts California's meal and rest break laws).

23      Proper analysis of the issue requires an examination of whether the California meal and rest

24  break laws are generally preempted as applied to a class of market participants rather than solely as

25  applied to a particular carrier.  *See New Hampshire Motor Transport Ass'n v. Rowe*, 448 F.3d 66, 72

26  (1st Cir. 2006) ("[I]f a state law is preempted as to one carrier, it is preempted as to *all* carriers.")

4

Case No. 5:12-cv-05302-HRL
Defendant Trimac Transportation Services (Western) Inc.'s Memorandum
of Points and Authorities in Support of Motion for Judgment on the Pleadings

(emphasis supplied), *aff'd*, *Rowe*, 552 U.S. 364.  If the preemption question were instead tied to a factual analysis of the routes and services provided by a particular carrier to its customers, the preemption line could well be drawn to apply to some carriers and not others, or to some of an individual carrier's routes but not others—an obviously unworkable result.  *See id* at 72-73.

### 3.  California's Break Rules Claims Are Expressly Preempted by the FAAAA

The Supremacy Clause of the U.S. Constitution, art. VI, cl. 2, preempts and thus "invalidates state laws that 'interfere with, or are contrary to,' federal law."  *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985 (quoting *Gibbons v. Ogden*, 22 U.S. 1, 211 (1894)).  As the rulings in *Penske* and its progeny confirm California's meal break laws are *expressly* preempted by the FAAAA.

### a.  *The FAAAA Prevents "Patchwork" Regulation by Broadly Preempting State Laws that Impact Any Carrier's Prices, Routes or Services*

Pursuant to the FAAAA, "a State . . . may not enact or enforce a law . . . *related to a price, route or service of any motor carrier* . . . with respect to the transportation of property."  49 U.S.C. § 14501(c)(1) (emphasis supplied).  Congress enacted the FAAAA in 1994 with the goal of eliminating the "patchwork" of burdensome state regulations affecting the trucking industry.  To achieve that goal, Congress incorporated the broad preemptive language and effect of the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713(b)(1), as interpreted by the U.S. Supreme Court in *Morales v. Trans World Airlines*, 504 U.S. 375 (1992).  Indeed, the Ninth Circuit recently reconfirmed "[t]here can be no doubt that when Congress adopted the FAAA Act, it intended to broadly preempt state laws that were 'related to a price, route or service' of a motor carrier," *American Trucking Assn's, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1053 (9th Cir. 2009), which is borne out by the FAAAA's legislative history.

In 1978, after deciding "maximum reliance on competitive market forces" would best further "efficiency, innovation, and low prices" in the airline industry, Congress enacted the ADA.  *Morales*, 504 U.S. at 378.  "To ensure that the States would not undo federal deregulation with regulation of their own, the ADA included a pre-emption provision, prohibiting the States from enforcing any law

'relating to rates, routes, or services' of any air carrier." *Id*. at 378-79.[4]

In a later parallel course, Congress similarly deregulated interstate trucking in the Motor Carrier Act of 1980, and then enacted the FAAAA in 1994 after finding that "the regulation of intrastate transportation of property by the States" "imposed an unreasonable burden on interstate commerce," "impeded the free flow of trade, traffic, and transportation of interstate commerce," and "placed an unreasonable cost on the American consumers." Pub. L. No. 103-305, Title VI, § 601(a)(1), 108 Stat. 1569, 1605 (1994). According to Congress, state regulation of trucking "causes significant inefficiencies" and "increase[s] costs" and "inhibit[s] … innovation and technology." H.R. Conf. Rep. No. 103-677 at 87 (1994), reprinted in 1994 U.S.C.C.A.N. 1715, 1759. Moreover, despite deregulatory efforts at the federal level, Congress found "[t]he sheer diversity of [state] regulatory schemes [remained] a huge problem for national and regional carriers attempting to conduct a standard way of doing business." H.R. Conf. Rep. No. 103-677 at 87. So carriers would be free of this burdensome "patchwork" of state regulations, Congress decided that "preemption legislation [was] in the public interest as well as necessary to facilitate interstate commerce." *Id*.

In *Rowe*, the U.S. Supreme Court confirmed the FAAAA's broad preemptive effect when it held the act preempted Maine's regulations relating to the transportation and delivery of tobacco. *Rowe*, 552 U.S. at 367. In so doing, the Court emphasized that points previously made in *Morales* with respect to ADA preemption apply equally to preemption under the FAAAA. *Id*. at 370. Those same points support preemption of the California meal break laws Roberts seeks to apply here.

First, the FAAAA's preemptive sweep is broad, overriding state regulations "'*having a connection with, or reference to*'" carrier prices, routes, or services. *Id*. (quoting *Morales*, 504 U.S. at 384) (emphasis in original). Second (and significantly), preemption of state law may also occur even if the law's effect on prices, routes, or services "is only indirect." *Id*. In this respect, even though the Maine law was directly aimed at only shippers, compelling them to hire carriers that provided certain services, the Court found that the law indirectly required carriers to offer "services

---

[4] While the ADA refers to "rates" rather than "prices," "Congress indicated that it intended the change from 'rates' to 'prices' [in the FAAAA] to have no substantive impact." *Sanchez v. Aerovias De Mexico, S.A. De C.V.*, 590 F.3d 1027, 1029 n.3 (9th Cir. 2010).

6

Case No. 5:12-cv-05302-HRL
Defendant Trimac Transportation Services (Western) Inc.'s Memorandum
of Points and Authorities in Support of Motion for Judgment on the Pleadings

1   that differ significantly from those that, in the absence of regulation, the market might dictate" and

2   thus created "the kind of state-mandated regulation that the federal Act pre-empts." *Id.* at 372-73.

3       Third, *Rowe* held that "pre-emption occurs at least where state laws have a 'significant

4   impact' related to Congress' deregulatory and pre-emption related objectives," which the Court

5   identified as "helping assure transportation rates, routes, and services that reflect 'maximum reliance

6   on competitive market forces,' thereby stimulating 'efficiency, innovation, and low prices,' as well as

7   'variety' and 'quality.'" *Id.* at 371 (quoting *Morales*, 504 U.S. at 378). In this respect, the Court

8   confirmed the state-imposed impact forbidden by the FAAAA is not just a matter of dollars and cents.

9   It found the effect of Maine's law was "significant" and, for that reason, preempted because

> [t]o allow Maine to insist that the carriers provide a special checking system [for tobacco products] would allow other States to do the same.  And to interpret the federal law to permit these, and similar, state requirements could easily lead to a *patchwork of state service-determining laws, rules, and regulations*.  That state regulatory patchwork is inconsistent with Congress' major legislative effort to leave such decisions, where federally unregulated, to the competitive marketplace.

14  *Id.* (emphasis supplied).  The Court thus held the FAAAA preempted the Maine tobacco regulation

15  even if it did not *directly* regulate carriers and even if the costs it imposed on the transportation

16  industry were not directly measureable, but instead led to a "patchwork" of state laws with significant

17  impact on carrier prices, routes, or services.

18      Finally, *Rowe* also resoundingly rejected the idea that the FAAAA narrowly targets only

19  traditional "economic" or public utility-like regulation by the states.  The Court could not have been

20  more explicit in casting off the notion that "Congress' primary concern was . . . with state

21  'economic' regulation" when it decisively pointed out that Congress declined to insert the term

22  "economic" into its operative language "despite having at one time considered doing so."  *Id.* at 374

23  (citing S.R. No. 95-631, p. 171 (1978)).

24      Accordingly, and as persuasively summarized in *DiFiore v. American Airlines, Inc.*, 646

25  F.3d 81 (1st Cir. 2011), *cert. denied*, 132 S.Ct. 761 (2011, current Supreme Court jurisprudence

26  does *not* limit preemption to laws targeting only airlines or motor carriers or imposing traditional

27  "economic" regulation, nor does it even call for a so-called "presumption against preemption" in

28

7

Case No. 5:12-cv-05302-HRL
Defendant Trimac Transportation Services (Western) Inc.'s Memorandum
of Points and Authorities in Support of Motion for Judgment on the Pleadings

1    areas historically occupied by state law (a phrase never once mentioned in *Rowe*). *Id*. at 86.

2        Assessed against this legislative backdrop and as interpreted by recent authority including the

3    dispositive *Penske* case, the FAAAA strikes a fatal blow to Roberts' meal break claims.  Because

4    California's break rules as interpreted by Roberts cannot *help but* significantly affect Trimac's prices,

5    routes, and services – a result expressly forbidden by federal statute – Trimac cannot be subjected to

6    those rules as a matter of law.

7                    b.   *Penske Confirms the California Rules Have a "Substantive Impact" on*

8                         *Carrier Prices, Routes and Services*

9        If *Rowe* and the cases that follow it sound a death knell to enforcement of the meal and rest

10   break rules against carriers, then *Penske* court held, without qualification, that the California break

11   rules are "related to" carrier prices, routes, and services and thus preempted by the FAAAA because

12   they impose

13           *substantive restrictions* upon the breaks taken by motor carrier drivers and drivers'
             helpers, which *bind[ ] the motor carriers to a set of routes, services, schedules,*
14           *origins, and destinations that [they] otherwise would not be bound to* – thereby
             interfering with the competitive market forces in the industry.  *It is this kind of*
15           *interference Congress sought to avoid with the preemption clause that specifically*
             *prohibits state regulation related to prices, routes, and services.*
16

17   819 F. Supp. 2d at 1122 (emphasis supplied).  The *Penske* holding is dispositive because, as the lower

18   court affirmed by *Rowe* observed, the FAAAA preempts state laws related to the prices, routes, or

19   services of '*any*" carrier and, consequently, "if a state law is preempted as to one carrier, it is

20   preempted as to *all* carriers."  *New Hampshire Motor Transport Ass'n. v. Rowe*, 448 F.3d 66, 72 (1st

21   Cir. 2006) (emphasis supplied), *aff'd, Rowe*, 552 U.S. 364.[5]   In this regard, none of the cases

22   following *Penske*'s lead – neither *Cole*, nor *Jasper*, nor *Campbell*, nor *Aguiar*, nor *Esquivel* – has

23   found the question presented here to be the least bit fact sensitive, and each has declared the break

24   ────────────────────

25   [5] Were it otherwise, absurd results would follow.  Motor carriers like Vistar, Penske Logistics, Vitran
     Express and California Sierra Express would operate in California free from state meal and rest break
26   regulations that "directly and significantly related to such things as the frequency and scheduling of
     transportation" while industry counterparts like Trimac would be required to follow these regulations.
27   *Penske*, 819 F. Supp. 2d at 1119.  Subjecting some carriers to meal and rest break regulations to the
     exclusion of others cannot help but "interfere with the competitive market forces within the . . .
28   industry," a result forbidden by the FAAAA.  *Id.*

1   laws FAAAA-preempted in either a motion to dismiss or judgment on the pleadings setting.  The

2   *Penske* court's analysis is just as self-evident and equally compelling in this case.

3         i.      Effect on Routes.  That the California break rules are inextricably linked to a carrier's

4   routes is self-evident from what is perhaps the single-most incontrovertible fact in this case, which is

5   that every driver operating a commercial motor vehicle when a pre-appointed California break time

6   arises must necessarily *depart* from the route he is traveling to take the off-duty break period

7   California law demands.  It is of course true that not every driver may always be behind the wheel

8   when a break period arises.  But Roberts also cannot credibly claim that *no* truck will *ever* be on the

9   road when "no later than the start of [his] sixth hour of work" or "after no more than 10 hours of

10  work" the driver's first or second meal break entitlement arises, *Brinker Restaurant Corp. v. Superior*

11  *Court,* 53 Cal.4th 1004, 1038-40, 139 Cal.Rptr.3d 315, 273 P.3d 4513 (2012), or that *no* driver would

12  ever exit the highway for the 10-minute rest breaks California requires.  The very command of the

13  break rules as applied to truck drivers thus necessarily proves they are "related to" routes because a

14  truck driver may not simply click his heels and magically transport his truck off the highway and into

15  a rest area or parking spot without physically maneuvering the vehicle off the highway (i.e., off its

16  route), up or down an exit ramp (a different route), and along other roads (more different routes)

17  leading to a safe and legal place at which to park.  *See Jasper*, 2012 WL 7051321, at *6 (finding such

18  an argument persuasive).

19        In the larger sense, though, *Penske* also recognized the rigidity of the California rules not

20  only requires particular types of duty-free breaks of specified lengths but also dictates *when* each

21  break must be taken.  Accordingly, the break rules cannot help but affect drivers' routes because

22  they "depriv[e] them of the ability to take any route that does not offer adequate locations for

23  stopping, or … forc[e] them to take shorter or fewer routes."  *Penske*, 819 F. Supp. 2d at 1118-19.

24  In this regard, drivers of big trucks cannot simply stop and pull over to the side of a highway

25  arbitrarily, exit onto any seemingly convenient street, or park anywhere at will merely because a

26  California-imposed timeclock dictates a break.  Instead, in deciding when and where to take any

27  break, a responsible and professional driver must account for and evaluate a wide variety of safety-

28

9

Case No. 5:12-cv-05302-HRL
Defendant Trimac Transportation Services (Western) Inc.'s Memorandum
of Points and Authorities in Support of Motion for Judgment on the Pleadings

related considerations, including his own physical well being and that of others, weather and traffic conditions, the type of commodities being hauled, the size and weight of the load, and any and all motor vehicle safety laws or regulations applicable to the area in which the driver is traveling. *See Jasper*, 2012 WL 7051321, at *7 (plaintiffs cannot "escape the logic outlined in *Penske* whereby any company-wide [break policy] will necessarily have a significant effect on routes and schedules" because drivers "cannot, given their large vehicles, simply pull over to the side of the road for thirty minutes").[6]

In short, as the *Penske* court agreed, the duty-free breaks Roberts insists carriers must schedule throughout the workday would necessarily force drivers to alter their routes daily while searching out an appropriate place to exit the highway, locating stopping places that safely and lawfully accommodate their vehicles, and returning to their routes when their breaks are completed. The California break laws, in the succinct words of *Penske* and other courts, are thus "related to" routes and FAAAA-preempted because they "impact the types and lengths of routes that are feasible" and "bind motor carriers to a smaller set of possible routes," 819 F. Supp. 2d at 11-19, essentially compelling carriers to "only use routes that are amenable to . . . scheduled breaks" and requiring drivers to "select routes that allow for the logistical requirements of stopping and breaking" as California law commands. *Campbell*, 2012 WL 2317233 at *4; *Cole*, 2012 WL 4479237 at *4.

    ii.    <u>Effect on Services</u>. The meal and rest break rules' effect upon motor carriers' services is also inevitable. First, and most obviously, by requiring drivers to *stop working* at specified

---

[6] *See also* Cal. Code Regs. tit. 13, § 2845 (prohibiting trucks form idling for more than five minutes at a time); 49 C.F.R. § 392.14 (Dec. 25, 1968; amended July 28, 1995 (imposing a duty on commercial motor vehicle operators to use "extreme caution" when hazardous weather conditions exist); 49 C.F.R. §§ 397.7 (Dec. 12, 1994; 397.69 (Oct. 12, 1994) (restricting the parking of and authorizing local restrictions on the routing of vehicles carrying hazardous materials); Cal. Veh. Code § 21718(a) (prohibiting stopping on the freeway except under limited circumstances, such as when a vehicle becomes disabled); Cal. Veh. Code §§ 22500; 22502 (restricting locations at which vehicles may be parked); Cal. Veh. Code § 22505 (authorizing state authorities to prohibit the stopping or parking of vehicles exceeding six feet in height in areas that would be "dangerous to those using the highway"); Cal. Veh. Code §§ 22507.5; 35701 (permitting local authorities to impose weight restrictions upon the parking – or use – of commercial vehicles on designated roadways).

intervals during the day, the break rules command that *no* service be performed during those times. With respect to meal breaks specifically, the "duty-free nature" of the break is "its defining characteristic," requiring "uninterrupted half-hour periods" in which employees "are relieved of any duty or employer control and are free to come and go as they please." *Brinker*, 273 P.3d at 533-34. Dictating when *no* service may be performed (and when it may thereafter resume) is to directly and substantively affect service, thus making the break rules' preempted impact self-evident. *Cole*, 2012 WL 4479237 at \*4 (the break laws "affect services by dictating when services may *not* be performed") (emphasis in original); *see also California Dump Truck Owners Ass'n v. Nichols*, 2012 WL 273162 at \*8 (E.D. Cal. Jan. 30, 2012 (distinguishing an FAAAA-challenged environmental regulation from the break laws because the break laws "mandate[ ] that drivers *stop* at particular intervals throughout the day" and "[d]uring those intervals *no services* [can] be provided") (emphasis in original and supplied).  This first command of the break laws – the *forbidding* of service – is in and of itself sufficient to support an FAAAA-preemption finding without the need for any supporting evidence.

Other considerations confirm the break laws' preempted impact on service as well.  For example, no evidence is necessary to support the inescapable conclusion that, "[w]hen employees must stop and take breaks, it takes longer to drive the same distance." *Campbell*, 2012 WL 2317233 at \*4.  Longer drive times necessarily mean "increasing the time it takes to complete a delivery," and thus also necessarily means *less* service on the whole.  *Cole*, 2012 WL 4479237 at \*4.  Indeed, by requiring additional off-duty time of at least 1 hour and 30 minutes during the course of a workday of up to 14 hours, the California rules – by virtue of simple mathematics – reduce the amount of on-duty work time allowable to drivers under the HOS Regulations and thus necessarily limit the amount and level of timely, coordinated, and efficient transportation and logistics-related service Trimac can offer with drivers who "max out" on the 14-hour "driving window" the HOS Regulations permit.  This point was uncontested in *Penske*, 819 F. Supp. 2d at 1119, and cannot be credibly contested here either.  Certainly, a state law that demands *less* service is a law that has a direct "connection with" service too.

In addition, whether drivers "max out" on hours under HOS Regulations or not, California's meal and rest break structure undermines a feature of the HOS Regulations critical to Trimac's transportation service:  Subject only to the 11-hour driving/14-hour "driving window" rule, the HOS Regulations afford Trimac and its drivers maximum flexibility in scheduling their services and meeting customer demands.  But, as *Penske* acknowledged, the length and timing of breaks required by the California rules are "directly and significantly related to . . . the frequency and scheduling of transportation," 819 F. Supp. 2d at 1119, thus denying drivers the operational and scheduling flexibility federal law permits and requiring Trimac to re-schedule its service *around* each of the required breaks.  The California break requirements thus cannot help but affect and interfere with customer service.  Indeed, as the court in *Esquivel* acknowledged, without benefit of any supporting evidence, there is "no reason to conclude that [a carrier] could feasibly comply with California's meal break laws *without* altering routes and services."  2012 WL 516094 at *6 (emphasis supplied).

Finally, absent application of California's break rules in the rigid manner Roberts urges, Trimac's service in California, in accordance with the FAAAA's "deregulatory and pre-emption related objectives," reflects "'maximum reliance on competitive market forces'" – as opposed to a service schedule dictated by California law.  *Rowe*, 552 U.S. at 371.  In contrast, Roberts' proposed application of California's rules would bind Trimac "to a schedule and frequency of routes that ensures many off-duty breaks at specific times throughout the work day in such a way that would 'interfere with competitive market forces within the industry,'" in direct contravention of Congress' purpose and intent.  *Penske*, 819 F. Supp. 2d at 1118.  California's meal and rest break laws, therefore, are just the kind of state-mandated service regulation that the FAAAA preempts.

     iii.    <u>Effect on Prices</u>.  Because the FAAAA is written in the disjunctive (forbidding state laws "related to a price, route *or* service of any motor carrier"), it is more than enough for a preemption finding that the California break rules are both route- and service-impacting in their application to carriers.  49 U.S.C. § 14501(c)(1) (emphasis supplied).  Nevertheless, for all of the very reasons they affect routes and services, the California break rules have a significant effect upon carrier prices as well.  If the Court were to consider the logical relationship between service and

12

Case No. 5:12-cv-05302-HRL
Defendant Trimac Transportation Services (Western) Inc.'s Memorandum
of Points and Authorities in Support of Motion for Judgment on the Pleadings

1   prices, it would likely agree with the *Penske* court's confident belief that the "ramifications" of the

2   California break rules on routes and services "all contribute to create a significant impact on prices."

3   819 F. Supp. 2d at 1119.  Arguably, evidence might be required to prove that proposition, but one

4   related point is certain:  *no* evidence of the break rules' *actual cost* is necessary to *any* preemption

5   finding here because, even if carriers could alter how they perform their service at little expense,

6   "service arrangements are just what Congress did not want states regulating, whether at high cost or

7   at low."  *DiFiore v. Am. Airlines, Inc.*, 646 F.3d 81, 88 (1st Cir, 2011).

8           In any event, as the *Penske* court observed, unlike general wage laws that merely increase the

9   cost of doing business, the California break laws

10          are significantly more connected to the routes and services of a motor carrier than laws
            that merely impact the cost of labor.  The laws restrict [motor carrier] routes and
11          services in a way that is binding.  As such . . . these laws are "related to" the motor
            carrier's prices, routes, or services, and thus preempted by the FAAAA Act.
12

13  819 F. Supp. 2d at 1122.  That distinction between wage laws and the California break rules is

14  important not only "for the very reason that [it] helps mark the guardrail at the top of the [slippery]

15  slope," *id.*, but also because it demonstrates other cases have been wrongly decided and were likely

16  lead astray by unconvincing and exaggerated evidence or hyperbole.[7]  *See Kirby v. Immoos Fire*

17  _____

18  [7]  In this respect, the *Penske* court's reasoning compellingly rebuts both *Cardenas v. McLane Foodservices, Inc.*, 796 F. Supp. 2d 1246 (C.D. Cal. 2011), which relied principally upon wage law
19  cases to deny a motor carrier's summary judgment challenge to the California break rules on FAAAA grounds, and *Fitz-Gerald v. Skywest Airlines, Inc.*, 155 Cal. App. 4th 411 (2007), which – in less than
    a paragraph – rejected an air carrier's ADA challenge to California minimum wage and meal and rest
20  break claims.  *See also Mendez v. R.L. Carriers, Inc.*, No. C 11-2478 CW, 2012 WL 5868973 at *6
    (N.D. Cal. Nov. 19, 2012) (incorrectly characterizing the break laws as "wage protections").  As
21  *Penske* explained and *Kirby* would later confirm, it is a "mischaracterization" to label the break rules
    as "wage laws" that require the payment of a higher wage and merely increase the cost of doing
22  business.  819 F. Supp. 2d at 1120.  *Kirby*, 274 P.3d at 1167 (Cal. Lab. Code § 226.7 "is not aimed at
    protecting or providing employees' wages").  Rather, the California rules "require off-duty breaks for
23  employees at certain times and of certain lengths," "prescribe certain events (meal and rest breaks)
    that must occur over the course of the driver/installer's day," and thus "establish requirements which
24  substantively impact a motor carrier's routes and services."  819 F. Supp. 2d at 1120-1121.  *Fitz-
    Gerald*, which focused only on the cost of minimum wage compliance, 55 Cal. App. 4th at 423 n.7,
25  missed that point entirely.  And while it is unknown what "unconvincing and overly speculative"
    evidence (left undescribed in the opinion) led to the *Cardenas* court's concern that it "stretche[d]
26  plausibility – and the FAAAA – to suggest that nearly every state law would be preempted," 796 F.
    Supp. at 1256 n.4, *Penske* soundly dispels that concern and the similar worry of the *Fitz-Gerald* court
27  that a too-broad reading of ADA preemption "would result in the preemption of virtually everything
    an airline does." 55 Cal. App. 4th at 423 n.7.  There is no such "slippery slope" at work here because,
28  while a wage law simply increases the price of labor and merely makes prices, routes, and services

*Protection, Inc.*, 274 P.3d 1167 (Cal. 2012) ("[A] section 226.7 action is brought for the *nonprovision of meal and rest periods*, not for the 'nonpayment of wages.'") (emphasis in original); *Cole*, 2012 WL 4479237 at *6 (it is a "faulty premise" that the break laws are "wage laws"); *Jasper*, 2012 WL 7051321, at *8 (rejecting the argument that the break laws are "general wage provisions" outside the FAAAA's preemptive scope); *Esquivel*, 2012 WL 516094 at *5 (agreeing that "prevailing wage cases are fundamentally distinguishable from those involving meal and rest break laws for purposes of FAAAA preemption").

*Penske*, *Esquivel*, *Campbell*, *Aguiar*, and *Marine* make clear that California's meal and rest break regulations affect the prices, routes and services of motor carriers. Roberts' California meal break claims are therefore preempted by the FAAAA.

        c.   *The California Break Rules Produce an FAAAA-Forbidden "Patchwork" Effect*

It is not surprising that the *Penske* court declared California's break rules preempted because they produce the "patchwork" effect that is "forbidden" under the FAAAA, *Rowe*, 552 U.S. at 373, finding it "key" that "to allow California to insist when and for exactly how long carriers provide breaks for their employees would allow other States to do the same, and to do so differently." 819 F. Supp. 2d at 1120. The HOS Regulations provide uniform laws for the trucking industry throughout the United States with respect to commercial motor vehicle driving. Roberts now contends that, in California, drivers must also comply with California's break rules, which not only reduce the driver's maximum number of on-duty work hours in a day, but also dictate when and where breaks of specific duration must be provided and are thus far more restrictive than the HOS Regulations' requirements. And, if California is permitted such regulation, the floodgates would open for similar regulation from other states too. It would be hard to imagine a better example of "patchwork" regulatory impact if carriers were required to modify their delivery schedules and routes for each driver according to his or her geographic location at any given time. It was just this

---

"more expensive," the impact of the California break rules "is not derived from the increased cost of labor and is not tenuous" because the rules impose "substantive restrictions" on the carrier's routes and services themselves. 819 F. Supp. 2d at 1122.

14

Case No. 5:12-cv-05302-HRL
Defendant Trimac Transportation Services (Western) Inc.'s Memorandum
of Points and Authorities in Support of Motion for Judgment on the Pleadings

sort of "patchwork of state service-determining laws, rules, and regulations" that the Supreme Court held was preempted by the FAAAA, *Rowe*, 552 U.S. at 373, and it was just such a diverse state regulatory scheme that Congress, when it enacted the FAAAA, sought to avoid.  H.R. Rep. No. 103-677 at 87.  Enforcement of the FAAAA's mandate is therefore required, and Roberts' meal break claims should be dismissed.[8]

### d.   *Mendez Does Not Support a Contrary Conclusion*

As discussed above, the courts in *Penske*, *Campbell*, *Esquivel*, *Aguiar*, *Cole*, and *Jasper* all held the FAAAA preempts California's meal and rest break laws.  *Penske*, 819 F. Supp. 2d at 1124; *Cole*, 2012 WL 4479237, at *7; *Jasper*, 2012 WL 7051321, at *9; *Campbell*, 2012 WL 2317233, at *4; *Aguiar*, 2012 WL 1593202, at *1; *Esquivel*, 2012 WL 516094, at *6.  In *Mendez*, the court held the FAAAA did not preempt California's meal and rest break laws because they did not "relate to" motor carrier prices, routes, or services.  No. C 11-2478 CW, 2012 WL 5868973, at *4-7 (N.D. Cal. Nov. 19, 2012).  Specifically, the *Mendez* court found the meal and rest break laws did not "relate to" motor carrier prices, routes, or services because (1) the meal and rest break laws do not specifically refer to or "uniquely burden" the motor carrier industry or resemble "typical" state entry or tariff regulations but instead "appl[ies] broadly to all employers in California"; (2) the Ninth Circuit in *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1185 (9th Cir. 1998), held that a generally applicable California wage law did not "relate to" motor carrier rates, routes, or services; and (3) the flexibility of the meal and rest break laws allow a motor carrier to significantly minimize the effects the breaks on a carrier's prices, routes, and services.  This decision contradicts another decision by this Court that California's meal and rest break claims were

---

[8] It bears only brief mention that the *Penske* and other cases persuasively reject any notion that the "safety exception" to the FAAAA applies here because the California meal and rest break rules do not constitute the exercise of "safety regulatory authority … with respect to motor vehicles" under 49 U.S.C. § 14501(c)(2)(A).  819 F.2d at 1123 (citing *American Trucking*, 559 F.3d at 1054, which requires excepted laws to be "genuinely responsive to motor vehicle safety" lest the exception swallow the preemption rule).  *See also Cole*, 2012 WL 4479237 at *6; *Cardenas*, 796 F. Supp. 2d at 1256-58.

preempted by the substantially similar ADA. *Miller v. Southwest Airlines*, --- F. Supp. 2d ----, 2013 WL 556963, at \*5-\*7 (N.D. Cal. February 12, 2013).

For the reasons summarized below, the outlier holding in *Mendez* is based on "analyses and conclusions . . . flawed in several respects" and therefore does not undermine the majority position that the FAAAA does indeed preempt California's meal and rest break laws.[9]  *Marine*, No. RG07-358277, slip op. at 11.

        i.      <u>A Law Need Not Be Specifically Directed at Motor Carriers Nor Constitute Traditional "Economic" Regulation to Be Preempted By the FAAAA</u>.  The *Mendez* court erroneously viewed the California break laws as presumptively not preempted because they are not "typical" state entry or tariff regulations, do not make motor carriers their "principal object," and do not "uniquely burden" only motor carriers.   2012 WL 5868973, \*4-5.   *Mendez* is plainly an outlier ruling contradicted by the overwhelming weight of authority that, based upon both *Morales* and *Rowe*, has found state statutes preempted by the FAAAA and the ADA even though the laws were neither specifically directed at the trucking or airline industries nor aimed at traditional "economic" regulation (much like California's generally-applicable break laws).[10]  It is also significant that in the authoritative *DiFiore* case, the court found an employee "tips law" directly regulated air carrier services and prices and was therefore preempted by the ADA – joining other important cases in

---

[9] The recent order issued in *Brown v. Wal-Mart Stores, Inc.*, No. C 08-5221 SI, 2013 WL 1701581 (N.D. Cal. April 18, 2013), which followed the *Mendez* decision, is similarly flawed.

[10]   For example, based on *Rowe*, both the Eighth Circuit and a federal court in Illinois held that state law challenges to UPS's billing practices, as applied to its re-billing and late-payment fees, were preempted by the FAAAA.   *Data Mfg., Inc. v. United Parcel Serv.*, 557 F.3d 849, 852 (8th Cir. 2009); *Missing Link Jewelers, Inc. v. United Parcel Serv., Inc.*, 2009 WL 5065682, at \*2 (N.D. Ill. Dec. 16, 2009).   Other cases striking down generally-applicable laws that similarly did not target either the motor carrier or the airline industry are almost too numerous to mention.   *See American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995) (consumer fraud and deceptive practices act claims ADA-preempted); *In re Korean Air Lines Co.*, 642 F.3d 685 (9th Cir. 2011) (ADA preempted state anti-trust claims against airline); *Witty v. Delta Air Lines, Inc.*, 366 F.3d 380 (5th Cir. 2004) (ADA preempted state tort claims that airline seats caused deep vein thrombosis injuries because of effect on prices); *Chavis v. Storage of Myrtle Beach, Inc. v. United Van Lines, LLC*, 2012 WL 47469 (E.D. Mo. Jan. 9, 2012) (common law fraud-related claims FAAAA-preempted); *Samica Enters., LLC v. Mail Boxes Etc. USA, Inc.*, 637 F. Supp. 2d 712 (C.D. Cal. 2008) (implied covenant of good faith claim FAAAA-preempted); *AIB Express, Inc. v. FedEx Corp.*, 358 F. Supp. 2d 239, 251-52 (S.D. N.Y. 2004) (ADA preempted trade secrets and unfair competition claims as applied to FedEx).

holding to the view that even generally-applicable state laws core to the protection of workers' wages and workplace rights are not immune to Congress' wide-ranging preemptive strike. *See DiFiore*, 646 F.3d at 87-90.[11]  Most significantly, the *Penske* ruling and the six decisions that follow it show the same result applies here to the California break rule claims against Trimac under the FAAAA.

   ii. <u>*Mendonca* Dealt With Preemption of a Wage Law and is Therefore Inapposite</u>.  The *Mendez* court erred by not recognizing the distinction between "wage laws" and the meal and rest break laws and, therefore, its reliance on *Mendonca* was improper.  *Marine*, slip op. at 11.  As noted above, while a wage law simply increases the price of labor and merely makes prices, routes, and services "more expensive," the impact of the California break rules "is not derived from the increased cost of labor and is not tenuous" because the rules impose "substantive restrictions" on the carrier's routes and services themselves.  *Penske*, 819 F. Supp. 2d at 1122; *see supra* note 7 and accompanying text.  Thus, California's meal and rest break laws "relate to" carriers' prices, routes, or services notwithstanding any holding that the state's wage laws do not.

   iii. <u>The *Mendez* Court Overstated the "Flexibility" of the Break Laws</u>.  The court in *Mendez* wrongly concluded that the "flexibility" of the meal and rest break laws allow a carrier to comply with the laws without being rigidly bound to particular rates, routes, or services.  2012 WL 5868973, at *6-7.  First, the court incorrectly assumed motor carriers may "comply" with the break requirements by simply electing the "wage alternative" of Cal. Lab. Code § 226.7(b) and paying the one hour of premium pay the statute imposes for a missed break.  2012 WL 5868973 at *6.  This proposition was flatly rejected in the recent California Supreme Court decision in *Kirby*, 274 P.3d 1160 (Cal. 2012), which confirmed the premium pay requirement is the *remedy* for a break law violation, not an "alternative" to the break requirement itself.  As *Kirby* explains, Cal. Lab. Code § 226.7 "does *not* give employers a lawful choice between providing *either* meal and rest breaks *or*

---

[11] *See also Mitchell v. U.S. Airways, Inc.*, 874 F.Supp.2d 50 (D. Mass. July 12, 2012) (employee retaliation claims ADA-preempted); *National Fed'n. of the Blind v. United Airlines, Inc.*, 2011 WL 1544524 (N.D. Cal. Apr. 25, 2011) (California disability law claim ADA-preempted); *Travers v. Jetblue Airways Corp.*, 2009 WL 2242391 (D. Mass. July 23, 2009) ("tips law" wage claim ADA-preempted); *Brown v. United Air Lines, Inc.*, 656 F. Supp. 2d 244 (D. Mass 2009) ("tips law" wage claim ADA-preempted); *Blackwell v. SkyWest Airlines, Inc.*, 2008 WL 5103195 (S.D. Cal. Dec. 3, 2008) (California break rule claims ADA-preempted).

17

Case No. 5:12-cv-05302-HRL
Defendant Trimac Transportation Services (Western) Inc.'s Memorandum
of Points and Authorities in Support of Motion for Judgment on the Pleadings

1    an additional hour of pay," and paying an extra hour of premium pay "does not excuse a section

2    226.7 violation" any more than paying compensatory damages excuses the violation of any other duty

3    imposed by law.  *Id*. at 1256 (emphasis in original and supplied).[12]

4         Second, the *Mendez* court based its holding on the incorrect assumption that the break

5    requirements may be simply waived off whenever they are inconvenient.  *See id.* at 6.  Wage Order

6    No. 9 provides for no waiver of the rest break requirements at all, and the *Mendez* court's analysis did

7    not account for the very limited circumstances under which a duty-free meal break may be waived.

8    *Id.*  Under Wage Order No. 9, § 11(C), an on-duty meal period is permitted "*only* when the nature of

9    the work prevents an employee from being relieved of *all* duty," only when the parties have agreed in

10   advance to an on-the-job paid meal period by written agreement, and only then if the written

11   agreement permits the employee "to revoke the agreement at *any* time." (Emphasis supplied).  There

12   is nothing "flexible" about securing a written waiver conditioned upon such narrow circumstances –

13   let alone one that is revocable "at any time," which makes any option for an on-duty meal break

14   meaningless in practice and effect.  *See also Esquivel*, 2012 WL 516094, at *6 (on-duty breaks

15   permitted only when off-duty breaks are "virtually impossible" due to the nature of the work).

16   Furthermore, a commercial motor vehicle driver is generally not engaged in the type of work that

17   prevents him or her from being relieved of all duty.[13]

18        For these reasons, the Court should decline to follow the *Mendez* opinion.  Rather, the Court

19   should hold, in accord the majority position laid out in *Penske* and its progeny, that the FAAAA

20   preempts California's meal and rest break laws as a matter of law.

21

22   _____

23   [12] As such, just paying the drivers the premium pay instead of providing a meal break would expose
     motor carriers to significant Civil penalties.  *See* Cal. Labor Code § 2699.5 (identifying Cal. Labor
     Code § 226.7 as a Labor Code provision that, if violated, subjects an employer to civil penalties).

24   [13] In fact, the FMCSA has specifically stated that a driver can record meal stops as off-duty time for
25   purposes of the HOS Regulations.  *Regulatory Guidance for the Federal Motor Carrier Safety
     Regulations*, 62 Fed. Reg. 16370, 16422 (April 4, 1997).  Because a driver *can* be relieved of all duty
26   for meals under the HOS Regulations, therefore, the driver *must* be afforded off-duty meal periods
     under California's break rules.  In any event, the break rules permit the employee to rescind any
27   agreement to on-duty breaks at any time, Wage Order No. 9-2001, § 11(C), and thus whatever request
     the carrier might make of an employee to take an on-duty break is rendered meaningless in practice
28   and effect.

18

Case No. 5:12-cv-05302-HRL
Defendant Trimac Transportation Services (Western) Inc.'s Memorandum
of Points and Authorities in Support of Motion for Judgment on the Pleadings

C.      **California's Break Rules Are Impliedly Preempted By The HOS Regulations**

"The federal government has regulated the hours of service of commercial motor vehicle operators since the late 1930s, when the Interstate Commerce Commission ["ICC"] . . . promulgated the first HOS Regulations under the Motor Carrier Act of 1935." *Owner-Operator Independent Drivers Ass'n v. Fed. Motor Carrier Safety Admin.*, 494 F.3d 188, 193 (D.C. Cir. 2007). Interstate drivers' hours of service are now regulated comprehensively by the FMCSA pursuant to Congress's continuing mandate. *See* 49 U.S.C. §§ 31136(a); 31502(b). California's meal and rest break rules, if interpreted as Roberts urges to require employers to ensure particular types of breaks of particular duration and at particular times, are in conflict with the HOS Regulations if for no other reason than they effectively establish a maximum on hours worked that differs from the uniform, nationwide maximum set by the FMCSA. As a result, Roberts' meal break claims are preempted as applied to Trimac's interstate driving activity[14] and cannot survive summary judgment scrutiny.

### 1.   The HOS Regulations Impliedly Preempt Conflicting State Law

Federal law may not only preempt state law expressly, but also by implication, such as when state law "actually conflicts" with federal law. *Hillsborough County*, 471 U.S. at 713. Conflict preemption occurs *either* when compliance with both federal and state regulation is an impossibility *or* when state law "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives'" of federal law, in which event state law must yield to the principles and policies of the federal system. *Id.* at 713 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). Thus, conflicts between state and federal law still trigger an implied preemption analysis even if it is *possible* to comply with both regulatory regimes. As the U.S. Supreme Court has explained,

> The Court has not previously driven a legal wedge – only a terminological one – between "conflicts" that prevent or frustrate the accomplishment of the federal objective and "conflicts" that make it "impossible" for private parties to comply with both state and federal law. Rather, it has said that both forms of conflict in state law are "nullified" by the Supremacy Clause, and it has assumed that Congress would not want either kind of conflict.

*Geier v. American Honda Motor Corp.*, 529 U.S. 861, 873 (2000) (internal citations omitted).

---

[14] This argument assumes the Court granted Trimac's Cross-Motion for Summary Judgment (ECF No. 44) and concludes Roberts was subject to the jurisdiction of the Secretary of Transportation.

19

Case No. 5:12-cv-05302-HRL
Defendant Trimac Transportation Services (Western) Inc.'s Memorandum
of Points and Authorities in Support of Motion for Judgment on the Pleadings

Furthermore, it is settled law that federal policies carry just as much preemptive weight when evidenced by federal agency regulation, given the U.S. Supreme Court's "repeat[ed]" pronouncements "that state laws can be pre-empted by federal regulations as well as by federal statutes." *Hillsborough County*, 471 U.S. at 713; *Accord Fidelity Federal Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982) ("[f]ederal regulations have no less pre-emptive effective than federal statutes").[15]   That principle applies here where the FMCSA's HOS Regulations establish a national standard of work hours for drivers employed by carriers like Trimac.

The uniform national standard established by the HOS Regulations governs Roberts' daily work hours in two primary ways:  First, a driver may not drive after the 14th consecutive hour of coming on duty (a limitation that is *not* extended by any off-duty breaks taken within that time period—the 14-hour clock ticks on regardless of breaks) at which point he must then take 10 consecutive hours off.  Second, within the 14-hour "driving window," the driver may spend only 11 hours actually driving.   49 C.F.R. § 395.3(a).[16]   Within those parameters, drivers are *afforded essentially unfettered discretion as to when to drive and when to take breaks – either on- or off-duty – as business and circumstances require*.[17]

In contrast, Roberts interprets California's break rules to mandate the provision of 30-minute meal breaks every five hours and 10-minute rest periods every four, thus dictating the exact *number* of breaks required, the *length* of time a break must last, and *when* each break must be taken.  Cal. Lab. Code § 512(a); Wage Order No. 9-2001, §§ 11, 12.  The California break rules further mandate that the employee be "relieved of *all* duty" during the required 30-minute meal periods unless "the nature of the work" prevents the employee from being so relieved and then only when an on-duty

---

[15] Nor is a formal agency statement of preemptive intent required.  *Geier*, 529 U.S. at 884.

[16] The HOS Regulations go on to limit the amount of on-duty time permitted over the course of 7- or 8- day periods, after which the driver must take at least 34 hours off.  49 C.F.R. § 395.3(b.)

[17] On December 27, 2011, the FMCSA published changes to the HOS Regulations, but generally postponed required carrier compliance with the changes until July 1, 2013.  *Hours of Service of Drivers*, 76 Fed. Reg. 81134 (Dec. 27, 2011 ("2011 Final Rulemaking").  The newly-amended HOS Regulations, therefore, have no application to Roberts' Complaint, although as noted below would still preempt application of California's meal and rest break rules under the conflict preemption analysis discussed herein.  *See infra* note 21.

20

Case No. 5:12-cv-05302-HRL
Defendant Trimac Transportation Services (Western) Inc.'s Memorandum
of Points and Authorities in Support of Motion for Judgment on the Pleadings

meal period is agreed to in writing by the employee, which the employee has the right to revoke at any time.  Wage Order No. 9-2001, § 11(C) (emphasis supplied).[18]

### 2.  California's Break Rules Are Preempted Because They Effectively Establish a Maximum on Hours Worked that Conflicts with the HOS Regulations

The California break rules are preempted by virtue of simple subtraction.  Under the HOS Regulations - but for application of California's break rules – a driver is permitted to spend up to three non-driving hours engaged in any of the on-duty/not driving work he must perform[19] and drive for 11 hours.  49 C.F.R. § 395.3.  The driver can certainly take multiple breaks during that work day – both on- and off- duty as circumstances permit – and he can even work *more* than 14 hours in a day so long as he does not drive outside the 14-hour "driving window" and takes 10 hours off before driving again.[20]  Importantly, however, meal and rest breaks – whether logged as on- or off-duty – do *not* toll the HOS Regulations' prohibition on driving after the 14th hour of coming on duty.  49 C.F.R. § 395.3(a)(2).  In other words, once a driver comes on duty, he must stop driving no later than 14 hours afterward regardless of whether he spent one, three, or seven hours taking either on- or off-duty breaks.   Under the California meal and rest break rules, therefore, the driver loses a minimum of 1 hour and 30 minutes (two 30-minute meal breaks and three 10-minute rest breaks – all required to be off-duty) over the course of a 14-hour day in which the driver can neither drive nor perform on-duty/not driving tasks.  In short, the practical effect of the California rules is that a

---

[18] As noted above, a commercial motor vehicle driver is generally not engaged in the type of work that prevents him or her from being relieved of all duty.  *See supra* note 11.

[19] Numerous work activities other than driving can qualify as on-duty time, including time waiting to be loaded, unloaded, or dispatched at any terminal or facility; the performance of pre-trip and post-trip vehicle inspections; time spent fueling, servicing, or conditioning the commercial motor vehicle; all time spent within or upon the vehicle other than time spent resting in a sleeper berth; time spent completing paperwork and attending company meetings; all time loading or unloading, or preparing for or assisting in the loading or unloading of, the vehicle; all time spent complying with drug testing requirements, and all time spent performing any other work in the service of the motor carrier. 49 C.F.R. § 395.2.  One change that is effective February 27, 2012 under the newly amended rules is that the driver may now log time resting in a parked vehicle as off-duty time.  However, unless released from all responsibility for the vehicle, a driver's time spent waiting to be loaded or unloaded is still on-duty time.  *2011 Final Rulemaking*, 76 Fed. Reg. at 81160-81161.

[20] *See 2011 Final Rulemaking*, 76 Fed. Reg. at 81160 (rejecting changes to the rules that would require drivers to go off duty at the end of the 14-hour driving window).

driver's on-duty time is necessarily shortened from 14 hours or more to a maximum of only 12½ hours each day.[21]

This is exactly the type of preemptive conflict anticipated by the Ninth Circuit in *Pacific Merchant* and *Agsalud*. In *Agsalud*, the court joined a number of other circuits in ruling that state law overtime requirements are not preempted by the HOS Regulations. The court dismissed the contention that the "practical effect" of state overtime laws was to set a maximum number of hours lower than that permitted by the HOS Regulations because the defendant "did not show that Hawaii's overtime pay statute has the same effect as a regulation setting a firm maximum on hours worked." 833 F.2d at 810. Rejecting a similar challenge to California's overtime laws under the Shipping Act several years later, the Ninth Circuit in *Pacific Merchant* applied the same reasoning and explained its holding in *Agsalud* as follows:

> [A]bsent a *showing* that the state law *had the effect of* establishing a firm maximum on hours worked different from the maximum set by federal law, [state law] overtime pay provisions did not conflict with federal law, and were not preempted.

918 F.2d at 1416-1417 (emphasis supplied). Unlike overtime laws, however, California's meal and rest break requirements *do* "ha[ve] the effect of" establishing an absolute maximum on hours worked that differs from the maximum set by federal law because the California rules require drivers to stop work and take duty-free breaks that reduce their allowed 14-hour-or-more work time under the HOS Regulations by *at least* 1 hour and 30 minutes every day. Under *Pacific Merchant* and *Agsalud*, therefore, the California meal and rest break rules are in direct conflict with and thus preempted by the HOS Regulations.

The "different maximums" analysis under *Pacific Merchant* and *Agsalud* is not only directly applicable here, but also compelling because it demonstrates the California rules' interference with the objectives of federal law. Establishing policies to assure motor vehicle safety is the FMCSA's overriding directive, which, as the FMCSA has explained, requires "a familiar, *uniform* set of

---

[21] Of course, unlike other occupations, a commercial truck driver cannot simply declare that he is "off-duty" or "on-break." Rather, he must deviate from his route and find a safe and legal location to park his truck before he can begin his break. He must also repeat the process in order to return to his route. The time associated with these activities further cuts into the maximum number of hours he may work each day.

1    national rules govern[ing] motor carrier transportation." *Hours of Service of Drivers*, 72 Fed. Reg.

2    71247, 71249 (Dec. 17, 2007) (emphasis supplied).  Thus underscoring nationwide uniformity as a

3    purpose of the HOS Regulations, an FMCSA Interim Final Rule in 2007 sought "to ensure there will

4    not be a patchwork of laws across the nation" because, under a patchwork hours-of-service system,

5    "to remain legal, each driver would need to know the HOS limits in each State where he or she

6    operated [and drivers] could not be sure how their actions in one State would be treated in a State

7    with a different HOS regime," resulting in "confusion, uncertainty, and … an unpredictable impact on

8    safety."  *Id.*[22]

9         Notably, Trimac offers services using drivers who reside in many states and operate vehicles

10   across the nation daily.  If other states adopted California-like laws, merely determining *which* state's

11   rules would apply to any particular driver on any given day would be an impossible task fraught with

12   unacceptable uncertainty, and any notion that dispatchers could accurately and safely navigate drivers

13   through non-uniform and conflicting meal and rest break laws that any state saw fit to enact – while

14   simultaneously juggling customer scheduling demands and compliance with the HOS Regulations –

15   defies logic and reason.  In sum, because "[u]ncertainty is the enemy of enforcement and compliance

16   [and] can only impair highway safety," *Hours of Service of Drivers*, 72 Fed. Reg. at 71249, state meal

17   and rest break laws like California's – if adopted and enforced in other states – would produce a

18   patchwork of conflicting laws across the country that would create confusion and inconsistent safety

19   compliance by the industry.  Therefore, California's break rules undermine the safety considerations

20   the FMCSA sought to promote in adopting uniform hours-of-service requirements equally applicable

21   to all carriers and their drivers nationwide.

22        Finally, it is worth repeating that the conflict between the HOS Regulations and California's

23   break rules "does not evaporate" merely because it is *possible* to comply with both regulatory

24   regimes.  *de la Cuesta*, 458 U.S. at 155.  *Accord Geier*, 529 U.S. at 873.  Compelling drivers to take

---

[22]  Indeed, federal regulators' perceived need for nationwide uniformity in safety regulation of truckers dates all the way back to the years leading up to the ICC's first HOS Regulations decision in 1937.  *See Hours of Service of Drivers*, 61 Fed. Reg. 57252, 57253 (Nov. 5, 1996) ("[t]he lack of uniform regulations, or none at all in some States, generated allegations of disturbing abuses and concerns in both the economic and safety arenas").

California-required breaks is enough under *Pacific Merchant* and *Agsalud* to render the California rules preempted by the HOS Regulations because they set a different maximum on the number of hours a driver can work.  Roberts' meal break claims should be dismissed accordingly.[23]

**V.   CONCLUSION**

For all the foregoing reasons, Trimac therefore respectfully requests the Court issue an order entering judgment in its favor on the First Cause of Action of Roberts' Complaint and on the Fourth Cause of Action to the extent it alleges a UCL claim derivative thereof.[24]


Dated:  July 23, 2013                                    Respectfully submitted,


                                                        */s/Christopher J. Eckhart*_____
                                                        Christopher J. Eckhart
                                                        Christopher C. McNatt, Jr.

                                                        Attorneys for Defendant,
                                                        Trimac Transportation Services
                                                        (Western) Inc.

---

[23] Lest there be any question, the newly amended HOS Regulations, for all the reasons discussed above, will be just as preemptive as the current ones.  In the new rules, the FMCSA made changes to its 34-hour "restart" rule and also deemed it advisable to require a *single* 30-minute off-duty break that the driver may take at any time so long as he does not drive after 8 consecutive hours on duty without a break.  As described by the FMCSA, the new break provision "allows truckers to drive if they have had a break of at least 30 minutes, *at a time of their choosing*, sometime within the previous 8 hours," and thus "[d]rivers will have *great flexibility* in deciding when to take a break." *2011 Final Rulemaking*, 76 Fed. Reg. at 81134, 81136 (noting a driver who begins driving immediately after coming on duty may take his break any time between the 3rd and 8th hour) (emphasis supplied).  The amended rules establish a new national standard to which the FMCSA declined to add exceptions not otherwise already found in the HOS Regulations, *id*. at 81165, and the new federal break rule continues to advance the goal of operational flexibility, both of which would be undone by California's rigid and inconsistent meal and rest break requirements.  And, of course, California's 5-stop, 1 hour and 30 minute duty-free break requirements inescapably conflict with the new federal 30-minute break rule by setting a maximum on hours worked lower than what will be permitted in a work day over 10 hours once the amended HOS Regulations go into effect.

[24] Because Roberts' California meal break claims are preempted, any claim predicated on those purported violations must also fail.  *Aguiar*, 2012 WL 1593202, at *1 (dismissing all of plaintiff's claims on FAAAA preemption grounds because each was "related to California Labor Code provisions regarding meal and rest breaks").  Consequently, Roberts' derivative UCL claim must also be dismissed to the extent it is predicated on Roberts' meal break claims.

1

2                          <u>**CERTIFICATE OF SERVICE**</u>

3        I hereby certify that a copy of the foregoing was filed electronically on July 23, 2013.  Notice of

4   this electronic filing will be sent to the following parties of record by the operation of the Court's

5   electronic filing system.

6        Michael L. Tracy
         Megan E. Ross
7        Law Offices of Michael Tracy
         2030 Main Street, Suite 1300
8        Irvine, CA  92614

9                                              */s/Christopher J. Eckhart*_____
                                              Christopher J. Eckhart
10

11

12   4839-0365-2627, v. 13

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28