*E-FILED: August 28, 2013*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS ROBERTS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>TRIMAC TRANSPORTATION SERVICES (WESTERN), INC.,<br><br>　　　　Defendant. | Case No.  C12-05302 HRL<br><br>**ORDER (1) GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND (2) DENYING AS MOOT DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>[Re:  Docket Nos. 50, 51] |

Pursuant to Fed. R. Civ. P. 56, defendant Trimac Transportation Services (Western), Inc. (Trimac) moves for partial summary judgment as to plaintiff's first claim for relief under California Labor Code § 512(a).  Trimac also moves for judgment on the pleadings under Fed. R. Civ. P. 12(c), arguing that plaintiff's § 512(a) claim is preempted by the Federal Aviation Administration Authorization Act.  Plaintiff Douglas Roberts opposes both motions.  All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned.  28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  The court has considered the moving and responding papers, as well as the arguments of counsel.  Even assuming (without deciding) that the § 512(a) claim is not preempted, the court finds no basis for that claim anyway. Accordingly, Trimac's motion for partial summary judgment is granted and the motion for judgment on the pleadings is denied as moot.[1]

## BACKGROUND

Unless otherwise indicated, the following facts are not disputed.

Trimac is a regulated, for-hire motor carrier authorized by the Federal Motor Carrier Safety

---

[1] The court's rulings on plaintiff's evidentiary objections will be filed in a separate document.

1  Administration of the U.S. Department of Transportation. It provides trucking services to shippers
2  in the United States. Air Products and Chemicals (Air Products) is one of Trimac's customers.
3  Air Products manufactures and supplies industrial and specialty gas products. Trimac provides its
4  services to Air Products at Air Products' Santa Clara facility, i.e., Trimac's Santa Clara Branch is
5  physically located at Air Products' Santa Clara facility.
6      Roberts worked for Trimac as a driver from July 2008 through November 2010. For the
7  most part, he transported nitrogen and argon for Air Products.
8      Trimac says that throughout Roberts' employment, it had a meal and rest break policy that
9  complied with California law. According to defendant, that policy provides that non-exempt
10 employees who work more than five hours per day are required to take a 30-minute duty-free meal
11 period. Additionally, employees who work over 10 hours in a day are required to take a second
12 30-minute duty-free meal period. (Mot., Ex. C (Roberts Depo., Ex. 10)). As discussed more fully
13 below, plaintiff disputes that defendant had a meal break policy that complied with California law.
14     Defendant's meal break policy was not reduced to writing until sometime in late 2008.
15 However, Trimac says that its meal break rules were posted at the Santa Clara branch during
16 plaintiff's employment. (Mot., Ex. B (Gillit Depo. at 48:16-49:7)). Further, Trimac contends that
17 the meal break policy was the same both before and after the written policy was drafted. (Mot.,
18 Ex. A (Shaw Depo. at 24:2-9; 26:10-15); Ex. B (Gillit Depo. at 48:16-49:7)).
19     Copies of Trimac's meal break policy are signed and acknowledged by employees and
20 kept in the employees' personnel files. (Mot. Ex. A (Shaw Depo. at 19:4-25)). Plaintiff received
21 a copy of defendant's meal break policy, and reviewed and signed the document. (Mot. Ex. C
22 (Roberts Depo. at 92:8-24)).
23     Plaintiff now contends that Trimac failed to provide him meal breaks in violation of Cal.
24 Labor Code § 512(a). He also seeks relief under Cal. Bus. & Prof. Code § 17200 based on the
25 alleged meal break violations.

## LEGAL STANDARD

27 A motion for summary judgment should be granted if there is no genuine issue of material
28 fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a);

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. See Nissan Fire & Marine Ins. Co., Ltd., 210 F.3d at 1102. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. See id. A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. Anderson, 477 U.S. at 248-49.

"When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting Celotex Corp., 477 U.S. at 325). Once the moving party meets this burden, the nonmoving party may not rest upon mere allegations or denials, but must present evidence sufficient to demonstrate that there is a genuine issue for trial. Id.

## DISCUSSION

California employers are prohibited from employing an employee for more than five hours per day without providing the employee with a meal period of at least 30 minutes. Cal. Labor Code § 512(a); Cal. Code Regs., tit. 8, § 11040(11)(A). Additionally, employers cannot require employees to work during a meal break. Brinker Restaurant Corp. v. Super. Ct., 53 Cal.4th 1004, 1040, 273 P.3d 513, 536-37 (2012). An employer satisfies its obligation under § 512(a) if it "relieves its employees of all duty, relinquishes control over their activities and permits them a

3

reasonable opportunity to take an uninterrupted 30–minute break, and does not impede or discourage them from doing so." Id.

"[A]n employer may not undermine a formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks." Brinker, 53 Cal.4th at 1040, 273 P.3d at 536. But, "[p]roof an employer had knowledge of employees working through meal periods will not alone subject the employer to liability for premium pay . . .." Id. Rather, an employee must show that the employer impeded or discouraged the employee from taking breaks. Id.; Reece v. Unitrin Auto & Home Ins. Co., No. 5:11-CV-03960 EJD, 2013 WL 245452 at *5 (N.D. Cal., Jan. 22, 2013).

Roberts contends that Trimac did not have a policy of permitting drivers to take meal breaks---and that, if anything, the company's policy was to discourage drivers from doing so. He emphasizes that Trimac had no formal written policy until late 2008. "However, under California law, the absence of a formal written policy does not constitute a violation of the meal and rest period." Green v. Lawrence Service Co., No. LA CV12-06155 JAK, 2013 WL 3907506 at *8 (C.D. Cal., July 23, 2013). Nor does it "'necessarily imply the existence of a uniform policy or widespread practice of either depriving these employees of meal and rest periods or requiring them to work during those periods laws.'" Id. (quoting Dailey v. Sears, Roebuck & Co., 214 Cal. App.4th 974, 1001-02, 154 Cal. Rptr.3d 480 (2013)). Moreover, as discussed above, Trimac's human resources and managerial personnel testified that the company's meal break rules were posted at the Santa Clara branch during plaintiff's employment and that the meal break policy was the same both before and after the formal written policy was drafted. (Mot., Ex. A (Shaw Depo. at 24:2-9; 26:10-15); Ex. B (Gillit Depo. at 48:16-49:7)).

Plaintiff nevertheless points to an April 2007 Trimac U.S. Employee Handbook Handbook), which contains the following provision:

> All full-time employees, *except Company drivers*, are provided with one meal period each workday. Supervisors will schedule meal periods to accommodate operating requirements. Employees will be relieved of all active responsibilities and restrictions during meal periods and will not be compensated for that time.

4

(Ross Decl. ¶ 3, Ex. A) (emphasis added). He posits that this document shows that, prior to the preparation of its formal written policy, Trimac expressly excluded drivers from its meal break policy. However, according to Annelisa Shaw, Trimac's Director of U.S. Human Resources and Retention, the Handbook was intended to be a general guideline for all Trimac employees, drivers and non-drivers alike. Shaw avers that drivers are excluded from the Handbook's meal guidelines because (1) drivers are subject to other rules and regulations (i.e., by the U.S. Department of Transportation) as to meal breaks; and (2) due to the nature of their work, drivers' meal breaks are not scheduled by their supervisors. (Reply Ex. H (Shaw Decl. ¶ 5). This assertion is corroborated by the Handbook itself, which states that it "is intended to provide employees with a general understanding of [Trimac's] personnel policies," and that it "cannot anticipate every situation or answer every question about employment." (Id., Handbook Section 101). Further, Shaw avers that a state's requirements are handled at the branch level. (Id.).[2] Roberts has presented no evidence to refute Shaw's testimony.

Roberts next argues that Trimac's written meal policy does not comply with Brinker's timing requirements because it does not say that the first meal period must take place within the first five hours and does not provide for a second break no later than ten hours after the start of a shift. All Brinker requires is that the first meal period start after no more than five hours, i.e., no later than the start of an employee's sixth hour of work. 53 Cal.4th at 1041, 273 P.3d at 537. Review of Trimac's policy shows that it permits employees to take their meal break at any time before their shifts end, including within the first five hours of work. (Mot. Ex. C (Roberts Depo., Ex. 10)). Moreover, the policy does provide for a second meal period for employees who work more than 10 hours. (Id.).

Plaintiff maintains that Trimac's policy impedes or discourages breaks because employees are offered a break only if their shift is at least five hours in length. He goes on to express concern that, because drivers' shifts have no predetermined end time, a driver would not know at the

---

[2] The court finds that Shaw is qualified to testify about Trimac's U.S. Employee Handbook and employment policies and practices. Plaintiff's objections to the cited portions of her declaration are overruled.

5

beginning of his shift whether or not he would be entitled to a break. In plaintiff's view, Trimac's policy therefore is flawed because "[i]t is mathematically impossible for a break to be provided within the first five hours of a shift if the employee is not entitled to a break until after working five hours." (Opp. at 5). These arguments fail to convince. To begin, despite his professed concerns about possibly working less than five hours per day (and not getting a meal break), all indications are that Roberts worked more than five hours per day. (Reply Ex. J (Roberts Depo. At 78:15-16) (plaintiff's testimony that he usually worked five or six days per week); (Docket No. 1, Complaint ¶ 11 (alleging that Roberts worked 60-70 hours per week); (Reply, Ex. I (Eckhart Decl. Ex. 1) (plaintiff's spreadsheet documenting the regular and overtime hours he says he worked between October 2008 and May 2010). And, as discussed above, Trimac permits employees to take a meal break at any time before their shifts end, including within the first five hours of their shift. Roberts points to nothing in the policy requiring an employee to wait until after working for five hours before taking a first break.

Notwithstanding what defendant's written policy says, plaintiff claims that Trimac's actual policy is to discourage meal breaks. He says that when he was hired, he received no training about Trimac's meal policy; that defendant merely gave lip service to the written policy; and that defendant provided easy-to-eat snacks so that drivers could eat in their trucks while working, instead of taking a meal break. He also testified that he believed that Trimac wanted drivers to complete their work as quickly as possible and that, due to time pressures of the job, he did not think he could take meal breaks. (Mot. Ex. C (Roberts Depo. at 94:6-13). Additionally, Roberts says that Trimac never disciplined employees for failing to take a meal break and never checked trip records to see if any driver actually took meal breaks.

This last point is easily disposed of: an "employer is not obligated to police meal breaks and ensure no work thereafter is performed." Brinker, 53 Cal.4th at 1040, 273 P.3d at 537. Additionally, for the reasons discussed more fully below, "[d]efendant's liability cannot be established by showing a failure to convey a formal policy regarding breaks to an employee." Green, 2013 WL 3907506 at *8.

The problem for plaintiff is that he has provided no competent evidence to support his

6

assertions. His subjective beliefs about Trimac's actual policy remain just that. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) ("[T]his court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony.").

Indeed, Roberts himself testified that no one at Trimac ever (1) told him that he was not allowed to take a meal break; (2) said anything to give him the impression that the company did not want him to take meal breaks; or (3) said anything to give him the impression that Trimac's actual policy was different than its written policy. (Mot., Ex. C (Roberts Depo. at 68:22-24; 89:11-22; 94:6-24)). While plaintiff says that he did not take meal breaks because of time pressures at work, he testified that he had time to take both meal breaks and that he ate something every day that he worked. (Mot. Ex. C (Roberts Depo. at 91:4-92:4); Ex. E (Roberts Depo. at 52:7-9)). Moreover, plaintiff never complained to anyone at Trimac that he was not able to take meal breaks. (Mot. Ex. E (Roberts Depo. at 67:25-68:7, 101:9-18)).

Citing to the deposition testimony of Dan O'Connor, Trimac's Santa Clara branch manager, plaintiff asserts that defendant's "training . . . did not offer new hires meal breaks within the first five hours of a shift." (Opp. at 4). The cited testimony does not support that assertion. When asked how employees are trained about Trimac's meal break policies, O'Connor testified that he went over those policies during the interview process. (Mot. Ex. D (O'Connor Depo. at 77:3-19)). In the portions of testimony cited by Roberts, all O'Connor said was that he did not encourage employees to take meal breaks during "any specific time frame" because "[a]ll shifts were different," and he did not recall that Trimac had a "training module" about lunch breaks. (Id. (O'Connor Depo. at 77:20-23, 78:11-14).

Next, Roberts points to the deposition of Jerry Hartman, an Air Products employee, who testified that Air Products expected Trimac's drivers to make their deliveries by a given estimated time of arrival (ETA). Plaintiff says that Hartman went on to testify that Air Products did not allot time for breaks when scheduling the ETAs. When asked if Air Products "schedule[d] a time" for a meal break, Hartman said "No." (Ross Decl., Ex. E (Hartman Depo. at 35:5-7)). This testimony indicates that Air Products did not set a particular time for meal breaks. But nothing in Hartman's

testimony suggests that meal breaks were prohibited or discouraged. In any event, notwithstanding plaintiff's assertions about his work schedule, as discussed above, he testified that he had time to take both meal breaks and that he ate something every day that he worked. (Mot. Ex. C (Roberts Depo. at 91:4-92:4); Ex. E (Roberts Depo. at 52:7-9)).

The overwhelming evidence of record is that Trimac not only provided the requisite meal breaks, but also encouraged employees to take them. As discussed above, O'Connor testified that he covered Trimac's meal break policy during the interview process. (Mot. Ex. D (O'Connor Depo. at 77:3-19)). Additionally, Bob Penicks, a Trimac employee who trained Roberts, avers that he "always tell[s] [hi]s trainees to take a lunch break any time they feel they need one." (Reply Ex. G, Penicks Decl. ¶ 16). He recalls telling Roberts the same thing and that the "loading process provides a good opportunity to do so." (Id. ¶ 18). Defendant's unrefuted evidence also establishes that Trimac provided a room drivers to use for their breaks; O'Connor encouraged drivers daily to take breaks and lunches; and O'Connor personally bought food, such as sandwiches, fruit, and cocoa, for drivers "[b]ecause I want my drivers to take lunches and breaks, and because they need to eat." (Mot, Ex. D (O'Connor Depo. at 80:13-19, 87:17-88:5); Ex. E (Roberts Depo. at 45:1-46:1)).

Roberts has not presented a genuine issue of material fact that Trimac failed to provide him with required meal breaks, or that defendant prevented or discouraged him from taking those breaks. Accordingly, defendant's motion for summary judgment is granted as to plaintiff's first claim for relief under California Labor Code § 512(a). Defendant's motion is also granted as to plaintiff's fourth claim for relief under Cal. Bus. & Prof. Code § 17200, to the extent that claim is based on the alleged meal break violations.

**ORDER**

Based on the foregoing, Trimac's motion for partial summary judgment is granted. Trimac's motion for judgment on the pleadings is denied as moot.

**SO ORDERED**.

Dated:   August 28, 2013

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

5:12-cv-05302-HRL Notice has been electronically mailed to:

Christopher Chad McNatt , Jr    cmcnatt@scopelitis.com, mlazo@scopelitis.com

Christopher James Eckhart    ceckhart@scopelitis.com, nberry@scopelitis.com

Megan E. Ross    mross@michaeltracylaw.com

Michael Lion Tracy    mtracy@michaeltracylaw.com, calendar@michaeltracylaw.com